FILED

JAN 27 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY [signature] DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE of NORTH CAROLINA *ex rel.* Jennifer Brooks,<br><br>Plaintiff-Relator,<br><br>v.<br><br>WAKE EAR, NOSE AND THROAT SPECIALIST, P.A., dba WAKE ENT, and PANKAJ GUPTA,<br><br>Defendants. | CIVIL FILE NO.: 5:25-CV-00035-BO<br><br>**QUI TAM ACTION** |

**FILED IN CAMERA AND UNDER SEAL**

**COMPLAINT PURSUANT TO 31 U.S.C. §§ 3729–3732 OF THE FEDERAL FALSE CLAIMS ACT**

**None of the allegations set forth in this Complaint are based on public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office report, hearing audit, or investigation, or from the news media. Relator is the original source of this information.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE of NORTH CAROLINA *ex rel.* Jennifer Brooks<br><br>Plaintiff-Relator,<br><br>v.<br><br>WAKE EAR, NOSE AND THROAT SPECIALIST, P.A. dba WAKE ENT, and PANKJ GUPTA,<br><br>Defendants. | CIVIL FILE NO.: ____________<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |

**PRELIMINARY STATEMENT**

This lawsuit is based on the submission of false claims by Wake Ear, Nose and Throat, P.A., dba Wake ENT, a provider of otolaryngological care organized as a professional association under the laws of the State of North Carolina. Wake ENT purports to submit claims to and is reimbursed by Medicare and Medicaid, as well as the Veterans Administration and other federally funded healthcare programs. The company's physician owner, Pankaj Gupta, has engaged and directed others to engage in a pattern of fraudulent behavior resulting in submission to Medicare, Medicaid, and other federal programs of claims Defendants know to be false and fraudulent.



Case 5:25-cv-00035-M SEALED Document 1 Filed 01/27/25 Page 2 of 28

The fraud described herein has been perpetrated against the United States since at least January 2024 and, on information and belief, remains ongoing.

Defendant Wake ENT, through its policies, procedures, and officers, presented or caused to be presented, made or caused to be made, or used false records or statements, or caused false records or statements to be used, to cause false or fraudulent claims to be paid or approved by the government. Relator Jennifer Brooks, acting on behalf of the United States and the State of North Carolina, brings this civil action under the *qui tam* provision of the federal and North Carolina False Claims Acts and alleges as follows:

## PARTIES

1. Plaintiff-Relator Jennifer Brooks is a resident of Apex, Wake County, North Carolina.

2. Relator Brooks is a certified physician assistant licensed to practice in North Carolina; she has fourteen years of experience in otolaryngology. Relator Brooks worked for Wake ENT from May 2024 through August 2024.

3. Defendant Wake Ear, Nose and Throat Specialist, P.A., dba Wake ENT is a professional association organized under the laws of the State of North Carolina. Its registered agent is Pankaj Gupta, and its registered address is 115 Parkway Office Court, Suite 201, Cary, NC 27518. Its primary place of business is at that same address.

4. Wake ENT holds NPI number 1194047340.

5. On information and belief, between 40% and 80% of Wake ENT patients are insured by Medicare, Medicaid, or another government-funded program.

6. On information and belief, Defendant Pankaj Gupta is a resident of Cary, Wake County, North Carolina. Defendant Gupta is the physician owner of Wake ENT and an active participant in the management of the practice.

7. Defendant Gupta is a medical doctor licensed to practice in North Carolina. He holds NPI number 1306880992.

## JURISDICTION AND VENUE

8. Relator Brooks brings this action on behalf of the United States of America and the State of North Carolina for treble damages and civil penalties arising from Defendants' violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605 *et seq.*

9. None of the allegations set forth in this Complaint are based on public disclosure of allegations or transactions in a criminal, civil, or administrative hearing; in a congressional, administrative, or General Accounting Office report, hearing audit, or investigation; or from the news media. Relator is the original source of this information.

10. Relator has direct and independent knowledge within the meaning of 31 U.S.C. § 3730(e)(4)(B) of the information on which the allegations set forth in this Complaint are based, and she has voluntarily, through her attorneys, provided

this information to the Government by way of disclosure of substantially all material evidence and information in her possession.

11. Pursuant to *qui tam* procedural requirements, the Disclosure Statement was submitted to the United States on January 17, 2025.

12. This Court has subject matter jurisdiction over the federal claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1345, and false claims jurisdiction under 31 U.S.C. § 3732(a).

13. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case or controversy as the federal claims.

14. This Court has personal jurisdiction over Wake ENT and Pankaj Gupta because both are citizens of the forum state.

15. Venue is proper in the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions proscribed by 31 U.S.C. § 3729, *et seq.*, and complained of herein took place in this District. False claims venue is also proper in this District pursuant to 31 U.S.C. § 3732(a), because Defendants can be found, reside, or transact business in this District, and acts proscribed by 31 U.S.C. § 3729, *et seq.*, occurred in this District.

## IN CAMERA REVIEW

16. Under the provisions of 31 U.S.C. § 3730(b)(2), this Complaint is to be filed *in camera* and is to remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the Complaint and the Disclosure Statement. The Court may, at its discretion, grant continuance of the Seal Order.

## APPLICABLE REGULATORY AND LEGAL BACKGROUND

17. Wake ENT submits claims to and receives payment from the Medicare, the North Carolina Medicaid Program, the Veterans Administration, and, on information and belief, other federal healthcare programs, under the direction of Defendant Pankaj Gupta.

*Relevant Programs*

18. The United States Department of Health and Human Services (HHS), acting by and through the Centers for Medicare and Medicaid Services (CMS), is an agency of the United States responsible for administering federal Medicare programs, *see* 42 U.S.C. § 1395, *et seq*., under which healthcare facilities and providers may be reimbursed from federal funds for services provided to eligible patients. In addition to regulations, CMS issues subregulatory guidance to address policy issues as well as operational updates and technical clarifications of existing guidance.

19. The Medicaid program, launched in 1965 with the enactment of Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, is a cooperate program through which the federal government pays a percentage of the costs a state incurs for medical care for individuals who cannot afford to pay their own health care costs.

20. In exchange for receiving federal financial support for state-run Medicaid programs, states must comply with federal Medicaid laws and rules promulgated by CMS.

21. Although states are not required to provide Medicaid assistance, all fifty states do, including North Carolina.

22. The North Carolina Department of Health and Human Services (NCDHHS) administers the State's Medicaid program in accordance with Title XIX of the Social Security Act. *See* N.C. Gen. Stat. § 108A-54.

23. Health care providers who participate in the Medicaid program may bill NCDHHS in accordance with federal procedures. 42 C.F.R. § 455.18, N.C. Gen. Stat. § 108A-54.

24. Both federal and state law require providers to certify that they comply with all federal and state Medicaid regulations when they enroll in the Medicaid program. These requirements include ongoing training, criminal background checks for some staff members, and billing accuracy.

25. The Veterans Administration (VA) provides healthcare for retired and disabled veterans. While most VA care is provided within the VA system, the

Veterans Administration reimburses providers for authorized care provided outside the VA system, including home health care.

26. VA reimbursement is generally determined by applicable Medicare rates, when a Medicare rate is available, as it is for home health care.

27. The False Claims Act prohibits knowingly and willfully making or causing to be made any false statement or misrepresentation of material fact in any application for any benefit or payment under a federal health care program, including Medicaid. 42 U.S.C. § 1320a-7b(a).

28. The North Carolina False Claims Act parallels the federal False Claims Act, specifically prohibiting knowingly and willfully making or causing to be made any false statement or misrepresentation of material fact for any benefit or payment under a federal or state healthcare program, including Medicaid. N.C. Gen. Stat. § 1-607(a).

*Non-Physician Practitioner Billing Rules*

29. Non-physician practitioners (NPPs) are Nurse Practitioners, Physician Assistants, and other Advanced Practice Registered Nurses. These providers have additional education, beyond the usual nursing education, and a wider scope of practice than registered nurses.

30. Services or procedures billed by NPPs are reimbursed at 85% of the amount allowed by the Medicare Physician Fee Schedule (MPFS).

31. CMS pays for NPP services in outpatient settings in two ways: under the physician's NPI for services provided incident to a plan of care created by the

physician, and under the NPP's NPI for services provided by the NPP within his or her scope of practice as defined by the state of licensure and under the general supervision of a physician.

32. "Incident-to" billing encompasses services provided in the physician's office by an NPP or other auxiliary staff member (such as an RN or medical assistant). *See* Medicare Benefit Policy Manual, Chapter 15, § 60; *"Incident To" Services*, MLN Matters No. SE0441 (rev. August 24, 2016). Incident-to billing is allowable only in specific circumstances:

(a) The NPP provides the entire service.

(b) The service is provided in an office setting, under the direct supervision of a physician (not necessarily the billing physician who created the plan of care).

(c) The NPP providing the service is an employee of the physician or practice, and the service is both commonly offered by the office and an integral, but incidental, part of the care plan.

(d) The patient is an established patient receiving the service under an established plan of care. In other words, incident-to billing is not available either for new patients or for established patients seeking care for a new problem.

(e) The physician has performed an initial service on a prior date and developed a plan of care under which the incident-to services are provided.

(f) The physician remains actively engaged in the patient's care, defined as reentering the case at regular intervals.

33. Incident-to care may be billed under the NPI of the physician who developed the plan of care or under the NPI of the NPP providing the care.

34. When the NPP provides the entire service or procedure under the general supervision of a physician, that service or procedure should be billed under the NPP's NPI—not the physician's.

*Credentialing Requirement*

35. Neither physicians nor NPPs may bill any insurance provider—including Medicare and Medicaid—until they are appropriately credentialed. Credentialing is the process by which an insurance company establishes that a given care provider is qualified to be reimbursed for services provided.

36. Medicare, and some other insurance companies, require additional information and verifications for credentialing.

37. Credentialing is usually provided by a provider's employer; this is especially true for NPPs who work under the supervision of a physician.

38. Because the credentialing process can be complex, especially when multiple insurance providers are involved, practices often hire external companies to handle credentialing.

*Coding and Billing for CT Scans*

39. CT scans of the head and neck are a frequent diagnostic tool for otolaryngologists, for instance to image the sinus cavities or establish the existence or extent of a suspected tumor.

40. CT scans are billed under a number of different CPT codes, depending on what part of the body is involved and whether or not the scans are done using contrast. For scans of the orbit, ear, or fossa without contrast, the most common type of otolaryngology scan, the CPT code is 70480.

41. CT scans may be both performed and read by the same provider, in which case the claim includes only the 70480 code.

42. However, the scan and the interpretation of the results may be done by different providers. For instance, a patient may be sent out for the actual scan, with the results returned to the referring provider for interpretation. Or a clinic that owns the appropriate equipment but does not employ a radiologist may complete the scan in-house and send the results to an outside radiologist for interpretation.

43. When the scan and interpretation are provided separately, the CPT code must be followed by an appropriate modifier: -TC if the claim is only for the "technical component" (the actual scan itself), and -26 for the interpretation of the scan.

## FACTUAL ALLEGATIONS

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Relator pleads with particularity the conduct set forth below.

44. Relator Brooks was hired by Wake ENT in early 2024 and began work at Wake ENT's newly acquired Sanford office in May 2024. She was told, at the time she signed her contract and throughout her onboarding process, that Wake ENT would make sure she was credentialed when she began work there in late May 2024.

45. In her first weeks at Wake ENT, Relator Brooks discovered a disorganized, haphazardly managed practice. The offices were untidy and crowded, and the practice was perennially short-staffed. Paychecks were routinely short or late, and Relator Brooks never received full information about the benefits promised in her contract.

46. Key functions were handled by individuals who were often not present at the office, including Minnie Gupta, Defendant Gupta's wife, who handled payroll and personnel issues and Gabria Cooper, who handled imaging orders, from the provider's request through insurance approval.

47. The practice manager, Kathy Rinehardt, handled myriad other administrative issues, from HR concerns to purchasing to claims and billing.

48. The disorganization also affected patient care.

49. Imaging orders and referrals were lost or inexplicably delayed for weeks; the practice's medication stores included expired medications, which were dispensed to patients.

50. Defendant Gupta routinely delegated much of his work, requiring medical assistants to write his notes and enter medication orders in his name.

51. Early on, Defendant Gupta's medical assistant ordered medications for several patients under Relator Brooks's name, although Relator Brooks had never seen or treated the patients.

52. Thus, when Relator Brooks discovered she had not yet been credentialed by the practice, it appeared to be another manifestation of the disorganization in the practice.

53. However, as she pushed to have her credentialing completed, she met increasingly hostile resistance, ending with her summary termination in August 2024.

54. At one point, Ms. Rinehardt told Relator Brooks that "credentialing is expensive" and the practice did not intend to complete her credentialing until Defendant Gupta was sure she would stay.

55. Although Relator Brooks saw patients and provided care at Wake ENT's Sanford, North Carolina, office for nearly four months—as many as twelve patients a day—she was never credentialed by the practice.

56. During her short tenure at Wake ENT, in addition to the credentialing issue, Relator Brooks witnessed a host of troubling practices, including two patterns that represent outright fraud.

57. First, every service provided by the practice was billed under Defendant Gupta's NPI, regardless of who provided it.

58. Second, the practice billed for CT scans and interpretations it could not have provided because it did not have the required technical and medical staff.

*Non-Physician Practitioner Billing*

59. Relator Brooks believes that all of the patients she saw during her tenure with Wake ENT were billed under Defendant Gupta's NPI, and paid at Defendant Gupta's full rate rather than the 85% reimbursement rate for care provided by physician assistants.

60. This belief is supported by information Relator Brooks received from front desk and administrative personnel at Wake ENT, who told her much of her work was being billed under Defendant Gupta's name.

61. Relator Brooks reviewed data in Athena for patients she saw and found that all of the claims she viewed listed Defendant Gupta as both the rendering and supervising provider. Where Relator Brooks was mentioned, she was designated the scheduling provider, not the actual provider of care. Many of the claims did not even mention Relator Brooks.

62. Furthermore, the practice policy was that all procedures were billed under Defendant Gupta's NPI.

63. According to Jana Jeffreys, Wake ENT's surgery scheduler, the philosophy was that everyone "billed under the office," and the office was Defendant Gupta.

64. Ms. Jeffreys left the practice rather than conform to what she saw as fraud and later filed a complaint with the Medical Board for issues related to the practice's provision of CT scans, including requiring untrained personnel to perform scans and failing to provide radiation monitoring badges.

65. Wake ENT's NPI profile indicates that it is a nonparticipating provider for Medicare, and a search of data.cms.gov for Wake ENT claims produced no files.

*CT Scan Billing*

66. Wake ENT offered, and billed for, routine CT scans of the head and neck, generally under CPT code 70480.

67. However, the practice never had either a radiology technician or a radiologist on staff.

68. Instead, CT scans were performed by untrained office staff, including Rebecca Britt.[1] None of the staff wore radiation monitoring badges.

69. Relator Brooks was told that Wake ENT often sent scans out for reading by an external radiologist.

70. Yet, data on Athena showed all scans billed under CPT code 70480, with no modifier to indicate billing for the technical component only.

*Retaliation*

71. In June 2024, Relator Brooks discovered she was not credentialed after a patient complained to her about out-of-network costs.

72. She was surprised by this, since she had returned the packet of credentialing information to Ms. Rinehardt on March 24, about a month after she signed her contract and a full two months before she began work at Wake ENT.

[1] Ms. Britt was also, at times, charged with ordering medications for patients.

73. In a June 24, 2024, email, the practice's credentialing provider told Relator Brooks that the agency had never received the information needed to proceed with credentialing.

74. Concerned that she was practicing without appropriate credentialing—and thus without the ability to bill for her services—Relator Brooks attempted to take over the process herself, communicating directly with the credentialing agency.

75. After repeated frustrating exchanges over the following month, with the credentialing agency and with Ms. Rinehardt, the credentialing agency abruptly cut off communication with Relator Brooks, telling her to direct her questions to Ms. Rinehardt.

76. Stymied by Ms. Rinehardt's failure to provide any information regarding her credentialing, Relator Brooks told Defendant Gupta in a late July email that she would not work until she was credentialed.

77. Defendant Gupta and Ms. Rinehardt told Relator Brooks she had "misused the chain of command" by emailing Defendant Gupta directly.

78. On August 13, Relator Brooks was written up for a host of purported offenses, including failing to respond to emails quickly enough, failing to provide sufficient patient documentation, discarding office materials and engaging in unprofessional conversations with staff, and unspecified "repeated complaints" regarding her clinical knowledge and bedside manner. She was also reprimanded for failing to tell the practice about a resolved complaint the Medical Board had dismissed.

79. That same day, Ms. Rinehardt told Relator Brooks that her credentialing was "on hold" and the practice didn't want to complete the process if Relator Brooks was thinking about leaving because "credentialing is expensive."

80. At that time, Relator Brooks had not indicated to Ms. Rinehardt or anyone that she was considering leaving Wake ENT.

81. On August 21, Defendant Gupta called Relator Brooks into the Cary office for a meeting.

82. At that meeting, which lasted less than five minutes, he terminated Relator Brooks for cause.

83. A termination letter Relator Brooks received asserted ongoing problems with documentation, "multiple patient complaints," and "a lack of professional judgment," including "spread[ing] information which is not true among the staff."

84. None of these complaints had been mentioned to Relator Brooks at any time before the reprimand two weeks before.

85. In fact, Defendant Gupta and Ms. Rinehardt had both repeatedly expressed satisfaction with Relator Brooks's work.

86. Relator Brooks was immediately escorted off the premises.



Case 5:25-cv-00035-M SEALED Document 1 Filed 01/27/25 Page 17 of 28

## CAUSES OF ACTION

## VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(A) FALSE CLAIMS FOR PAYMENT

87. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.

88. On information and belief, from at least January 2024 to the present, Wake ENT knowingly or recklessly presented, or caused to be presented, false or fraudulent claims for payment or approval by Medicare, Medicaid, the Veterans Administration, and other federally funded healthcare programs.

89. On information and belief, Wake ENT billed under Defendant Gupta's NPI as a physician for services provided by Relator Brooks and other NPPs.

90. On information and belief, Wake ENT billed for CT scans that were not performed by a qualified technician or read by a qualified radiologist.

91. Wake ENT's leadership team, including Defendant Gupta, was aware of this practice and not only condoned but required it.

92. These fraudulent practices are material because the government pays for health care based on both the type of services provided and the professional providing the service.

93. The United States is entitled to treble damages based upon the amount of damages sustained by the government as a result of violations of 31 U.S.C. § 3729(a)(1).

94. The United States of America is entitled to a civil penalty between $5,000 and $10,000 for each violation, as required by 31 U.S.C. § 3729(a)(1) and



Case 5:25-cv-00035-M SEALED Document 1 Filed 01/27/25 Page 18 of 28

adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 890 (1990).

95. Relator is also entitled to reasonable attorneys' fees, costs, and a percentage of any proceeds or settlement of the claim pursuant to 31 U.S.C. § 3730(d).

## VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(B) FALSE RECORD OR STATEMENT

96. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.

97. From at least January 2024 to the present, Wake ENT and it's staff knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims.

98. On information and belief, Wake ENT staff, under the direction of Defendant Gupta and Ms. Rinehardt, routinely falsified records by indicating that Defendant Gupta had provided care actually provided by Relator Brooks and other NPPs.

99. These fraudulently altered records were then used to substantiate billing and claims to both government and private insurors.

100. Wake ENT's leadership team, including Defendant Gupta and Ms. Rinehardt, are aware of this pervasive practice and have promoted it.

101. These claims are material because the government would not have paid physician.

102. The United States is entitled to treble damages based upon the amount of damages sustained by the government as a result of violations of 31 U.S.C. § 3729(a)(1).

103. The United States of America is entitled to a civil penalty between $5,000 and $10,000 for each violation, as required by 31 U.S.C. § 3729(a)(1) and adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 890 (1990).

104. Relator is also entitled to reasonable attorneys' fees, costs, and a percentage of any proceeds or settlement of the claim pursuant to 31 U.S.C. § 3730(d).

**VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3730(h) RETALIATION**

105. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.

106. Section 3730(h) of the False Claims Act provides relief for "[a]ny employee, contractor, or agent" subjected to discharge, demotion, suspension, threats, harassment, or any other discriminatory action in response to her lawful "efforts to stop 1 or more violations of this subchapter."

107. To demonstrate a violation of this provision, and thus eligibility for relief, the employee must allege facts sufficient to show that (1) she believed her employer was violating the False Claims Act, (2) that her belief was objectively reasonable, and (3) that her actions were designed to stop that violation. See *Carlson v. DynCorp Int'l LLC*, 657 Fed. Appx. 168, 173 (4th Cir. 2016).

108. Relator Brooks held an objectively reasonable belief that her employer was violating the False Claims Act.

109. Specifically, she believed that her employer's failure to provide full credentialing for her, and redirecting billing for her work to his NPI, represented a violation of federal and state regulations and billing standards.

110. Her belief was based on her knowledge of billing practices, her conversations with other staff members at Wake ENT, and her survey of claims data available in Athena.

111. When Relator Brooks brought these issues to the attention of Defendant Gupta and Ms. Rinehardt, she was ignored and shut down.

112. When she refused to let the matter go, Relator Brooks found herself first reprimanded and then summarily terminated on fabricated grounds.

113. This experience has caused Relator Brooks serious economic and emotional distress.

114. Consequently, Relator Brooks is entitled to relief under 31 U.S.C. § 3730(h), including without limitation two times the amount of lost pay, as well as compensation for other economic and noneconomic impacts of her termination, costs, and attorneys' fees.

## VIOLATION OF NORTH CAROLINA FALSE CLAIMS ACT N.C. GEN. STAT. § 1-607(a)(1) SUBMITTING FALSE CLAIMS FOR PAYMENT

115. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.

116. From at least January 2024 to the present, Wake ENT has knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by the North Carolina Medicaid program.

117. Wake ENT's leaders, including Defendant Gupta and Ms. Rinehardt, knew or should have known that Wake ENT was routinely and systematically falsifying records.

118. These claims are material because Wake ENT and Defendant Gupta received funds from the State of North Carolina to which they were not entitled and which the State would not otherwise have paid.

119. The State of North Carolina is entitled to treble damages based on the amount of damages sustained by the government as a result of violations of N.C. Gen. Stat. § 1-607(a)(1).

120. The State of North Carolina is entitled to a civil penalty between $5,000 and $11,000 for each violation, as required by N.C. Gen. Stat. § 1-607(a) and adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410 § 5, 104 Stat. 890 (1990).

121. Relator is entitled to reasonable attorneys' fees, costs, and a percentage of any proceeds or settlement of the claim under N.C. Gen. Stat. § 1-610.

**VIOLATION OF NORTH CAROLINA FALSE CLAIMS ACT,**
**N.C. GEN. STAT. § 1-607(a)(2)**
**FALSE RECORD OR STATEMENT**

122. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.



Case 5:25-cv-00035-M-BM *SEALED* Document 1 Filed 01/27/25 Page 22 of 28

123. From at least January 2024 to the present, Wake ENT recklessly or knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims.

124. Wake ENT personnel, under the direction of Defendant Gupta and Ms. Rinehardt, routinely falsified medical records and billing submissions to show that Defendant Gupta provided care and performed procedures actually provided by NPPs, including Relator Brooks.

125. Wake ENT personnel, under the direction of Defendant Gupta and Ms. Rinehardt, routinely falsified billing submissions to indicate that they provided a complete CT scan service, when the practice employed neither qualified radiology technicians nor radiologists to read the scans.

126. The claims derived from those falsified records were submitted to North Carolina's Medicaid program for payment.

127. These claims are material because Wake ENT and Defendant Gupta received funds the government would not have paid had the records been correct and accurate.

128. The State of North Carolina is entitled to treble damages based upon the amount of damages sustained by the government as a result of violations of N.C. Gen. Stat. § 1-610(a)(2).

129. The State of North Carolina is entitled to a civil penalty between $5,000 and $11,000 for each violation, as required by N.C. Gen. Stat. § 1-610(a)(2)

and adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 890 (1990).

130. Relator is also entitled to reasonable attorneys' fees, costs, and a percentage of any proceeds or settlement of the claim pursuant to N.C. Gen. Stat. § 1-610.

## VIOLATION OF N.C. FALSE CLAIMS ACT, N.C. GEN. STAT. § 1-607(a)(1) FALSE RECORD OR STATEMENT

131. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.

132. From at least January 2024 to the present, Wake ENT knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by, and actually received funds from, the North Carolina DHHS under the North Carolina Medicaid program.

133. From at least January 2024, Defendants knowingly made or caused to be made false records or statements, including falsified care schedules, in violation of N.C. Gen. Stat. § 1-607(a)(2).

134. From at least January 2024, Wake ENT, via its physician owner Defendant Gupta and its manager Ms. Rinehardt, conspired to falsify claims and other documents and submit falsified documents in support of false or fraudulent claims for payment to the North Carolina Medicaid program.

135. Defendants' acts and practices violated the North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605 *et seq.*

136. The State of North Carolina paid claims that it would not have paid but for the Defendants' deceptive and unlawful practices.

137. By reason of Defendants' unlawful practices, which continue to this day, the State of North Carolina has been damaged and continues to be damaged.

138. The State of North Carolina is entitled to treble damages based on the amount of the damages sustained through these violations. N.C. Gen. Stat. § 1-607(a).

139. The State of North Carolina is entitled to a civil penalty between $5,500 and $11,000 for each violation; that amount may be adjusted by the Federal Civil Penalities Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 890 (1990). N.C. Gen. Stat. § 1-607(a).

140. Relator is also entitled to reasonable attorneys' fees, costs, and a percentage of any proceeds or settlement of the claim. 31 U.S.C. § 3730(d).

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

141. Relator reaffirms and realleges the foregoing paragraphs and incorporates them herein.

142. Through the North Carolina False Claims Act, the North Carolina General Assembly has expressed the public policy that healthcare providers should be prevented from submitting false claims to the North Carolina Medicaid Program or any state program.

143. In seeking to make sure she was properly credentialed and Wake ENT followed Medicare regulations, Relator Brooks was engaging in activity that is protected by law: acting to prevent the submission of false claims.

144. Wake ENT, via its physician owner Defendant Gupta and its manager Ms. Rinehardt, sought to deter Relator Brooks from this activity by first reprimanding her and then terminating her for cause.

145. Relator Brooks's termination violated public policy in that it retaliated against her for seeking to prevent the practice's submission of false claims to North Carolina Medicaid.

146. Consequently, Relator is entitled to compensatory and punitive damages, in an amount to be determined by trial, and all other damages allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator, on behalf of herself, the United States of America, and the State of North Carolina, prays as follows:

1. This Court find Defendants Wake ENT and Pankaj Gupta violated both federal and state False Claims Acts based on the causes of action alleged herein.
2. This Court enter judgment against Defendants and award the United States treble damages based on the amount of damage suffered by the United States

and a civil penalty between $5,000 and $10,000 for each violation of 31 U.S.C. § 3729, plus the costs and expenses of this action, with interest.

3. This Court enter judgment against Defendants and award the State of North Carolina treble damages based on the amount of damage suffered by the State of North Carolina and a civil penalty between $5,500 and $11,000 for each violation of N.C. Gen. Stat. § 1-607(a), as adjusted by the Federal Civil Penalties Act of 1990.

4. This Court enter judgment against Defendants and award Relator reasonable attorneys' fees, costs, and a percentage of any proceeds or settlement of the claims pursuant to 31 U.S.C. § 3730(d) and N.C. Gen. Stat. § 1-610.

5. This Court find Defendants Wake ENT and Pankaj Gupta unlawfully retaliated against Relator Brooks in violation of 31 U.S.C. § 3730(h).

6. This Court find Defendants Wake ENT and Pankaj Gupta wrongfully terminated Relator Brooks in violation of public policy.

7. This Court enter judgment against Defendants and award Relator compensatory and punitive damages for retaliation and wrongful termination, plus attorney's fees and costs, as allowed by law.

8. This Court grant any other relief required in the interest of justice.

## JURY DEMAND

**RELATOR DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 27th day of January 2025.

**MILLER LAW GROUP, PLLC**


/s/
MaryAnne M. Hamilton
N.C. Bar No. 59323
W. Stacy Miller, II
N.C. Bar No. 21198
Miller Law Group, PLLC
Post Office Box 6340
Raleigh, North Carolina 27628
Telephone: (919) 348-4361
Fax: (919) 729-2953
maryanne@millerlawgroupnc.com


**CHESHIRE PARKER SCHNEIDER, PLLC**


/s/
Elliot Abrams
N.C. Bar No. 42639
133 Fayetteville St., Ste. 400
Raleigh, NC 27601
Telephone: (919) 833-3114
elliot.abrams@cheshirepark.com